**Eli RAITPORT, Plaintiff,**

v.

**CHASE MANHATTAN CAPITAL CORP. et al., Defendants.**

**No. 74 Civ. 462.**

United States District Court,
S. D. New York,
Jan. 9, 1975.

Eli Raitport, plaintiff pro se.

Shearman & Sterling, New York City, for defendant FNCB Capital Corp.; by John J. E. Markham, II, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant Midland Capital Corp.; by James W. Lamberton, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant Chase Manhattan Corp.; by Richard C. Tufaro, New York City, of counsel.

Kronen & Bernstein, New York City, for defendant Hanover Capital Corp.; by Sheldon H. Kronen, New York City, of counsel.

WHITMAN KNAPP, District Judge.

Plaintiff, proceeding *pro se*,[1] has filed a complaint against various lending institutions licensed by the Small Business Administration as Small Business Investment Corporations, alleging that their failure to finance his business ventures constitutes a violation of the Small Business Act, 15 U.S.C. § 631 et seq., the Small Business Investment Act of 1958, as amended, 15 U.S.C. § 681 et seq., the Economic Stabilization Act, 12 U.S.C. § 1904 note (1973 Supp.) the Sherman Act, 15 U.S.C. § 1 et seq., and the Civil Rights Act, 42 U.S.C. § 1985. An entrepreneur and inventor in the automotive, appliance and energy conservation fields, plaintiff claims that, in reliance upon advertisements by the defendants as to the availability of financing for small businesses, he "approached the defendants numerous times" for the purpose of obtaining capital for the development and production of his various inventions, and that defendants refused to finance his proposals. Plaintiff has concluded from such refusals that the defendants are "engaged in an unscrupulous conspiracy to help monopolize certain industries . . . to preclude establishment of new firms in [the] automotive field, in [the] appliance field, and energy producing or energy conservation fields". Moreover, he claims that defendants "were instrumental to prevent [sic] other financial institution [sic] from helping plaintiff", thus "restrain[ing] plaintiff from entering [the] trade of his choice", in violation of the Sherman Act. Finally, plaintiff has characterized defendants' alleged refusal "to assist" him as a "conspir[acy] to deprive [him] of his civil rights", in violation of the Civil Rights Acts.

As a result of the alleged conspiracy in restraint of trade and the claimed violation of his statutory and constitutional rights, plaintiff claims to have suffered loss of profits in the amount of $314,000,000.00, and seeks treble damages therefor.

On March 4, 1974 plaintiff filed an amended complaint containing a petition for a preliminary injunction. In essence, the relief sought was an order enjoining the defendants from discriminating against new businesses and from failing to assist the formation of new firms in the fields of energy conservation and environmental protection. After a hearing, the motion was denied on the basis of a finding that the plaintiff's remedy at law was adequate, since whatever injury he may have suffered could be compensated by money damages.

Subsequently, the parties proceeded with their discovery, under the direction of Magistrate Schreiber. After extensive discovery by plaintiff, two of the defendants, Hanover Capital Corporation ("Hanover") and Chase Manhattan Capital Corporation ("Chase") moved for summary judgment pursuant to F.R. Civ.P. 56. Upon the completion of discovery, the remaining defendants—FNCB Capital Corporation and Midland Capital Corporation—also moved for summary judgment. Although these motions were filed—and argued—separately, the court elects to treat them as one for the purposes of its decision. For the reasons set forth below, the motions are granted.

■■ Upon our analysis of the complaint, we must conclude that, with one exception, none of its theories presents a claim upon which relief may be granted. Neither the Small Business Act, nor the Small Business Investment Act create a private right of action in favor of a frustrated borrower against a small business investment company. Royal Services, Inc. v. Maintenance, Inc. (5th Cir. 1966) 361 F.2d 86, 92, Jenkins v. Fidelity

1. Although proceeding *pro se*, plaintiff appears to be an experienced litigator. Cf. Raitport v. General Electric Company, et al., 1974-2 CCH Trade Cases ¶ 75,313 (Bonsal, J., S.D.N.Y.1974); Raitport v. Small Business Administration (E.D.Pa.1974) 380 F.Supp. 1059; Raitport v. National Bureau of Standards (E.D.Pa.1974) 378 F.Supp. 380; Raitport v. General Motors Corp. (E.D.Pa.1974) 366 F.Supp. 328.

Bank (E.D.Pa.1973) 365 F.Supp. 1391, 1401, United States v. McIntyre Veneer, Inc. (M.D.La.1972) 343 F.Supp. 1095, 1097. The decision whether or not to provide financing under the Small Business Investment Act is completely within the discretion of the Small Business Investment Company (SBIC). The function of each SBIC is to make loans to small business concerns "in such manner and under such terms as the small business investment company may fix in accordance with the regulations of the [Small Business] Administration". 15 U.S.C. § 684(a). As set forth in the regulations, the principal limitations are that the funds may only be invested in small business concerns and only when there is evidence that the desired credit is not otherwise available on reasonable terms, 13 C.F.R. § 120.1(a) (1974); the loans may not be in excess of the statutory proscriptions, nor may they be for the purpose of paying off creditors, 13 C.F.R. § 120.2(d)(1)(i) (1974). In addition, there must be an assurance of repayment, 13 C.F.R. § 120.2(c) (1974) and the funds of SBIC's cannot remain idle, 13 C.F.R. § 107.1003(a) (1974).

 By way of introducing his claims under the Small Business Act and the Small Business Investment Act, the plaintiff somewhat ambiguously refers to the "Economy Stabilization Act, subchapter 21"[2] as an additional basis of jurisdiction. Although it is not clear from the complaint to what statute the plaintiff is referring, a careful reading of the amendments to Chapter 21 of Title 15 suggests that plaintiff is relying upon the 1971 and 1973 amendments to the Economic Stabilization Act, which provide for the establishment of the President's National Commission on Productivity. These provisions were enacted as part of the Economic Stabilization Act, and not as a part of the Employment Act of 1946 (which comprises Chapter 21 of Title 15), even though they have been published as Section 1026 of the Employment Act of 1946, 15 U.S.C. §§ 1021, 1026 (1973).[3] The only language in these provisions even remotely related to plaintiff's litigating theory is a general policy statement favoring the promotion of "efficient production . . . and use of goods and services . . . which depends [in turn] on the effectiveness of management, *the investment of capital* for research, development, and advanced technology . . ." 15 U.S.C. § 1026(a)(1) and (3) (1973) (emphasis added). There is apparently nothing more specific in § 1026 which bears any relation, however ephemeral, to plaintiff's theory. There most certainly is no provision creating a private right of action in favor of an entrepreneur who claims to have been denied financing. In fact, § 1026 creates no private right of action whatsoever. All it purports to do is outline in some detail the duties and powers of the National Commission on Productivity.

 Nor can plaintiff hope to overcome the fatal deficiency of his claims under the Small Business Act, the Small Business Investment Act and the Economic Stabilization Act by joining them with a claim under the Civil Rights Act of 1861, 42 U.S.C. § 1985.[4] Although the plaintiff does not specify on which subsection of § 1985 he relies, it is clear from a reading of this statute that the only provision even remotely appropriate

---

2. Presumably, the plaintiff meant subchapter 21 of Title 15 of the United States Code, since he lists it as the final citation in a string of citations, all of which were clearly indicated as being in Title 15.

3. These provisions may also be found, in the form of a note, under both 12 U.S.C. § 1904 and 5 U.S.C. § 5305.

4. Unlike most complaints invoking the Civil Rights Act of 1861, the instant one purports to state a claim under § 1985 alone, and not in conjunction with § 1983. Consequently, the discussion in the defendants' briefs concerning the absence of "state action" is beside the point.

would be that contained in subsection 3.[5] In essence, § 1985(3)—which speaks of going "in disguise on the highway"—creates a cause of action for conspiracy to deprive any person of the equal protection of the law. The prerequisites of such a cause of action are authoritatively set forth in Griffin v. Breckenridge (1971) 403 U.S. 88 at 102, 91 S.Ct. 1790, at 1798, 29 L.Ed.2d 338, as follows:

> "The language [in § 1985(3)] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps some otherwise class-based, invidiously discriminatory animus behind the conspirators' action." (footnote omitted).

Although plaintiff has alleged the existence of a conspiracy between private financial institutions, he has made no allegations of racial or otherwise class-based bias on the part of defendants. As a result, the complaint fails to state a cause of action under 42 U.S.C. § 1985(3).

In addition, plaintiff has not indicated with any degree of clarity, which, if any, of his rights have been infringed upon by the defendants in violation of § 1985(3). Surely it goes without saying that no one has a "right" to financial backing, just as the defendants owe no duty to plaintiff specifically to invest in his inventions. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992; United States v. Kohn, 243 F.Supp. 293, 297 (W.D.S.C. 1965).[6]

Despite the plaintiff's failure to state a claim upon which relief may be granted under the Small Business Act, the Small Business Investment Act, the Economic Stabilization Act or the Civil Rights Act of 1861, we find that the complaint does state a cause of action under the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq. Were the plaintiff able to show by competent evidence that the defendants were, in fact, "instrumental [in preventing] other financial institution [sic] from helping plaintiff", for the purpose of "restrain[ing] plaintiff from entering [the] trade of his choice", and that the defendants were "engaged in an unscrupulous conspiracy to . . . monopolize certain industries . . . to preclude establishment of new firms in [the] automotive, . . . appliance . . . and energy producing or energy conservative fields", he would be entitled to relief under 15 U.S.C. § 15.[7]

However, the only "evidence" the plaintiff proffers could by no stretch of the imagination meet his burden of proof under the statute. His entire case rests on the assumption that his inventions are so economically promising that the only explanation for the defendants'

---

5. 42 U.S.C. § 1985(3) provides, *inter alia,* that:
> "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

6. If we should be wrong in our conclusion that the complaint on its face fails to state a cause of action under § 1985(3), summary judgment would in any event have to be granted for the reasons stated in the concluding portions of this opinion—because of plaintiff's failure to suggest any evidence of conspiratorial action on the part of defendants.

7. "§ 15. Suits by persons injured; amount of recovery
Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

refusal to finance them must be the existence of an "unscrupulous" conspiracy. The plaintiff offers no expert testimony as to the worth and feasability of his invention, but relies instead upon his own, inevitably self-serving, opinion. He has conducted extensive discovery, under the supervision of Magistrate Schreiber, but can point to no documentary evidence of any agreement among the defendants to monopolize certain industries in restraint of trade. Nor does he suggest the availability of any testimony, other than his own above described speculations, which would support his allegations that the defendants do in fact either monopolize or intend to monopolize the automotive, appliance and energy conservation fields.

In brief, all the plaintiff has been able to establish—or even to suggest—is that some of the defendants have refused to extend credit. Although this may be unpleasant—or even financially disastrous—to plaintiff, it gives him no cause of action under the Sherman Act. United States v. Colgate & Co. (1919) 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992, Dipson Theatres, Inc. v. Buffalo Theatres, Inc. (2d Cir. 1951) 190 F.2d 951, cert. den. 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 691 (1952). Such parallel business behavior, without more, does not establish an illegal conspiracy in violation of the Sherman Act. Kreager v. General Electric Co. (2d Cir. 1974) 497 F.2d 468, 471; Raitport v. General Electric Co. (S.D.N.Y.1974) (Bonsal, J.) 1974—2 CCH Trade Cases, ¶ 75,313. As the Supreme Court observed in *Colgate, supra* (250 U.S. at 307, 39 S.Ct. at 468):

> "In the absence of any purpose to create or maintain a monopoly, the act [Sherman Act] does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.

The motions for summary judgment are, accordingly, granted.

So ordered.