Eli **RAITPORT**, Plaintiff,

v.

**COMMERCIAL BANKS LOCATED WITHIN THIS DISTRICT AS A CLASS**, and Foundations Operating Investment Portfolios and managed directly or indirectly by above said banks as a class, Defendants.

No. 75 Civ. 66 (HFW).

United States District Court,
S. D. New York.

March 31, 1975.

————◆————

Eli Raitport, pro se.

Shearman & Sterling, New York City, for defendant First National City Bank; John J. E. Markham, II, New York City, of counsel.

## MEMORANDUM DECISION AND ORDER

WERKER, District Judge.

Plaintiff, pro se, brings this antitrust treble damage action against a purported class of all commercial banks in this district and all foundations operating investment portfolios managed by these banks. First National City Bank ("Citibank") is named as the representative party of the class of defendant banks and foundations. Prior to answering the complaint, Citibank has moved for summary judgment upon the grounds of *res judicata*

based on the opinion of Judge Knapp in Raitport v. Chase Manhattan Capital Corp., et al., 388 F.Supp. 1095 (S.D.N.Y.1975), wherein Judge Knapp granted the summary judgment motions of all defendants in that action including FNCB Capital Corporation, a wholly owned subsidiary of Citibank. For the reasons discussed below, Citibank's motion is granted.

The allegations and theories upon which plaintiff seeks recovery are stated in his complaint as follows:

"(1) Plaintiff alleges that defendants have unlawfully refused to deal with him and restrained him from continuing and entering business as set forth below in violation of 15 USC 2;

(2) Plaintiff alleges that defendants have conspired to refuse to deal with him in violation of 15 USC 1 & 2.

(3) Plaintiff alleges that defendants have conspired to destroy investment banking industry for the goal of monopolizing the commercial banking industry in violation of 15 USC 1 & 2.

(4) Plaintiff alleges that defendants conspired on behalf of automotive, appliances, energy producing and food producing industries to monopolize in violation of 15 USC 1 & 2.

(5) Plaintiff alleges that defendants discriminate without justification against new manufacturing businesses in violation of 15 USC 13.

(6) Plaintiff alleges that defendants discriminate without justification against small manufacturing companies competing or attempting to compete against energy producing, automotive, appliances and container industries in violation of 15 USC 13."

The plaintiff then proceeds to describe himself as an "inventor-entreprenour" whose time and efforts are devoted to fighting such problems as inflation, safety and energy shortage. After describing the roles of "inventor-entreprenours" and commercial and invest-

ment banks in the American economic system, the plaintiff lists thirty-six (36) lines of products which would be manufactured by companies that he is attempting to organize and finance. According to the complaint, the defendants are involved in a "malicious conspiracy" to monopolize the automotive, major appliance, container manufacturing and energy producing industries. As part of this alleged conspiracy, the defendant banks and foundations have allegedly conspired and implemented policies to limit the financing of new companies, including those organized by the plaintiff, which would seek to be competitors of established companies in the automotive, appliance, container and energy producing industries. Because of the alleged conspiratorial conduct on the part of the defendants, the plaintiff claims that he has been damaged in excess of the amount of two billion ($2,000,000,-000) dollars and asks that that amount be trebled, and for interests and costs.

In the litigation before Judge Knapp, the plaintiff sued four lending institutions licensed by the Small Business Administration as Small Business Investment Corporations. His complaint alleged violations of the Small Business Act, 15 U.S.C. § 631 et seq., the Small Business Investment Act of 1958, as amended, 15 U.S.C. § 681 et seq., the Economic Stabilization Act, 12 U.S.C. § 1904 (1973 Supp.), the Sherman Act, 15 U.S.C. § 1 et seq., and the Civil Rights Act, 42 U.S.C. § 1985. Judge Knapp concluded that none of the theories except the antitrust theory presented a claim upon which relief could be granted. 388 F.Supp. at 1097. As part of his antitrust theory in that case the plaintiff alleged that the defendants were engaged in an "unscrupulous conspiracy to help monopolize certain industries, i. e., to preclude establishment of new firms in [the] automotive field, in [the] appliance field, and [the] energy producing or energy conservation fields." At page 1099 Judge Knapp concluded that:

Were the plaintiff able to show by competent evidence that the defend-

ants were, in fact, "instrumental [in preventing] other financial institution [sic] from helping plaintiff", for the purpose of "restrain[ing] plaintiff from entering [the] trade of his choice", and that the defendants were "engaged in an unscrupulous conspiracy to . . . monopolize certain industries . . . to preclude establishment of new firms in [the] automotive, . . . appliance . . . and energy producing or energy conservation fields", he would be entitled to relief under 15 U.S.C. § 15." (footnote omitted)

After extensive discovery by the plaintiff Judge Knapp found that plaintiff was unable to produce any evidence of conspiracy save for his assumption that the only explanation for the refusal to finance his companies must be the existence of an "unscrupulous" conspiracy. At most, plaintiff was able to show parallel business behavior. As a consequence, Judge Knapp granted summary judgment to all of the defendants.

Citibank argues that all of the claims made by the plaintiff in this action were fully adjudicated in the prior action before Judge Knapp, and thus the doctrine of *res judicata* bars this action. *See* Saylor v. Lindsley, 391 F.2d 965 (2d Cir. 1968). However, Citibank admits that it was not a party to the first action. Aside from the basic fact that one of the defendants in the prior action was a wholly owned subsidiary of Citibank, no other argument or authority is cited to show that Citibank has met the privity requirements necessary for the application of strict *res judicata* principles. *See generally,* IB J. Moore, Federal Practice ¶ 0.411[1] and [10] (2d ed. 1974). *Compare* Note, the Impact of Defensive and Offensive Assertion of Collateral Estoppel By A Nonparty, 35 Geo.Wash.L.Rev. 1010, 1022 n. 96 (1967).

Although invoked under the broad rubric of *res judicata,* Citibank's argument calls for application of the doctrine of collateral estoppel. In Lawlor v. National Screen Service, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955), the Supreme Court noted the distinctions between *res judicata* and collateral estoppel:

"[U]nder the doctrine of *res judicata,* a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit." [1]

 Undoubtedly, Judge Knapp's decision was a final judgment on the merits. Plaintiff was given a full and fair opportunity to prove his claims and when he failed to do so summary judgment was granted to the defendants. The granting of such a motion is a final adjudication on the merits. *See* Moore, *supra* at ¶ 0.409[1] and n. 26. Although it is not clear whether plaintiff has filed a timely notice of appeal from Judge Knapp's decision,[2] pendency of an appeal does not detract from the finality of the judgment. *See* Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S.

1. It should be noted that in *Lawlor,* the Supreme Court held that *res judicata* could not apply since *new* antitrust violations were alleged and therefore the causes of action in both suits were not the same. 349 U.S. at 328, 75 S.Ct. 865. In addition, the doctrine of collateral estoppel was not involved in the *Lawlor* decision. Id. at 330 n. 20, 75 S.Ct. 865.

2. Judge Knapp's decision was dated January 9, 1975. The plaintiff claims that he has filed a notice of appeal on February 6. However, there is no docket entry in the clerks office to show such a filing. What is shown is a notice of motion to proceed on appeal without costs which plaintiff dates February 6, 1975 but which was stamped as filed with the clerk on February 25, 1975. That motion was denied by Judge Knapp on March 6, 1975. Attached to that motion was a statement of issues to be raised on appeal, but no notice of appeal.

183, 189, 61 S.Ct. 513, 85 L.Ed. 725 (1941); Moore, *supra* at ¶ 0.416[3]. Moreover, the fact that Citibank was not a party to the first action does not necessarily prevent it from asserting collateral estoppel since the requirement of mutuality has been liberalized. *See* Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir. 1964); Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

■ The critical factor to be determined is whether the issues raised in this action were actually litigated and determined in the prior action. As discussed *supra* the only possible theory of recovery alleged in the prior suit was the antitrust claim of an "unscrupulous conspiracy" to monopolize certain industries and refusals to finance the plaintiff's businesses. These very same allegations, form the basis for plaintiff's complaint in this action.[3] Again a conspiracy to monopolize the same industries coupled with refusals to deal and discrimination against the plaintiff and other new manufacturing businesses is alleged. The core of both complaints is that over a period of years the plaintiff has asked the defendants in this action and the prior action to finance firms organized by the plaintiff, and that every defendant has refused to provide financing. In the prior action after plaintiff's failure to produce any evidence of a conspiracy, Judge Knapp concluded at p. 388 of 1100 F.Supp. that:

> "[a]ll the plaintiff has been able to establish—or even to suggest—is that some of the defendants have refused to extend credit. Although this may be unpleasant—or even financially dis-

astrous—to plaintiff, it gives him no cause of action under the Sherman Act."

What plaintiff has done in this action is simply to "switch adversaries" from the subsidiary credit corporations in the prior action to the parent of one of those corporations as a representative of all banks in this district and foundations with portfolios arranged by those banks. *See* Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892 (1942). The whole thrust of this action is the same as the prior action—one huge conspiracy to prevent plaintiff from manufacturing his inventions. As Professor Currie has noted:

> "In a sense, the plaintiff who proceeds against one adversary and loses, only to try again against another, may be guilty of the same kind of trifling with the public interest against piecemeal litigation that gives rise to the rule against splitting a cause of action."

Currie, Mutuality of Collateral Estoppel: Limits on The *Bernhard* Doctrine, 9 Stan.L.Rev. 281, 301 (1957) (footnote omitted).

Plaintiff, no stranger to the federal courts—*see* Raitport v. General Electric Co., CCH 1974-2 Trade Cases ¶ 75.313; Raitport v. General Motors Corp., 366 F.Supp. 328 (E.D.Pa.1973)—had a full and fair opportunity to litigate the same claims in his prior suit. He cannot avoid the results of that suit by merely suing the parent banks and embellishing on his theories.

Motion for summary judgment granted.

So ordered.

---

3. Plaintiff also alleges a violation of 15 U.S.C. § 13 in that new manufacturing companies are being discriminated against by the defendants. There is no indication in the complaint that defendants are engaged in *price* discrimination. A reading of the complaint shows that conspiracy to monopolize and refusal to deal form the basis of the complaint.