Eli RAITPORT, Plaintiff,

v.

CHEMICAL BANK et al., Defendants.

No. 76 Civ. 5038 (GLG).

United States District Court,
S. D. New York.

March 18, 1977.

Baker, Garber, Duffy & Baker, Hoboken, N. J., Helweil & Crispino, New York City, for defendant, Hudson Trust Co. (now known as Hudson United Bank).

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant, First National Bank of Louisville.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendants, Lloyds Bank Intern. Limited & Mellon Bank Int'l.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendant, First National Bank of Chicago.

Matthew F. Donohue, New York City, for defendant, The Chase Manhattan Bank, N. A.

Emmet, Marvin & Martin, New York City, for defendant, The Bank of New York.

Hawkins, Delafield & Wood, New York City, for defendant, Barclays Bank of New York.

Milbank, Tweed, Hadley & McCloy, New York City, for defendants, Banca Nazionale Del Lavoro & Credit Suisse.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant, Industrial National Bank of Rhode Island (s/h/s Industrial National Bank).

Pavia & Harcourt, New York City, for defendant, Central Cleveland Intern. Bank.

Peirez, Ackerman & Levine, Great Neck, N. Y., for defendant, Central State Bank.

Sahn, Shapiro & Epstein, New York City, for defendant, European-American Bank & Trust.

Robert J. Seymour, New York City, for defendant, Israel Discount Bank Limited.

Seward & Kissel, New York City, for defendants, Bank of America & Bank of America Nat. Trust & Sav. Assn.

Simon, Meyrowitz & Meyrowitz, New York City, for defendant, The Merchants Bank of New York.

Arthur L. Webber, New York City, for defendant, Bank of Commerce.

Willkie, Farr & Gallagher, New York City, for defendant, Pittsburgh Nat. Bank.

Llewellyn P. Young, New York City, for defendant, Bradford Trust Co.

Breed, Abbott & Morgan, New York City, for defendant, The First Nat. Bank of Boston.

Eli Raitport, pro se.

## OPINION

GOETTEL, District Judge.

■ It is unquestionably the law in this Circuit that *pro se* litigants' complaints are to be given solicitous and generous consideration, *Jackson v. Statler Foundation*, 496 F.2d 623 (2d Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975), and that summary disposition should rarely be granted, no matter how clear the facts may be or how frivolous the complaint. *Cunningham v. Ward*, 546 F.2d 481 (2d Cir. 1976); *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975); *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962). Even these broad commandments, however, have some limits.

### The Parties

Plaintiff, a self-styled entrepreneur and inventor, sues 58 banks, as well as "several hundred unnamed foundations, investment portfolio [sic] of which are managed by said banks individually, severally or jointly" as defendants. The complaint contains six rather overlapping and undelineated claims purportedly brought under the Sherman Antitrust Act, 15 U.S.C. §§ 1 & 2. Diversity jurisdiction is also claimed.[1]

The thrust of the complaint is the alleged failure of the defendants to loan money to the plaintiff and other new businesses engaged in enterprises intended to "resolve societal economic problems." The first cause of action charges that each defendant refused to loan money to the plaintiff. The second cause of action alleges that they conspired with private financiers to persuade them not to make such loans. The third contends that the defendants "systematically caused" the Small Business Administration's "acquesency" [sic] not to license any new manufacturing firm. The fourth cause of action alleges that the defendants influenced the public not to invest in stocks of such companies. The fifth cause of action maintains that the defendants inten-

---

1. Diversity jurisdiction does not exist since plaintiff is a citizen of Pennsylvania and at least some of the defendant banks, *e. g.*, Pitts-burgh National Bank, are also citizens of Pennsylvania.

tionally financed losing businesses so as to mislead private financiers into believing that investments in such business would be a poor risk. The last cause of action maintains that the defendants sponsored television programs that ridiculed inventors, thereby discouraging investment in their ventures.

The defendants include most (if not all) of New York's commercial banks, a number of out-of-state national banks, a number of foreign banks and certain specialized investments banks. (The latter either are not permitted, or do not generally make, domestic commercial loans of the type plaintiff seeks.)

### The Motions

Twenty-two defendants have separately moved to dismiss the complaint or for summary judgment. Twenty-six defendants have answered but not yet moved. The motions have been coming in at the rate of one or two a week, however, and it can be anticipated that the others will be heard from eventually. Nine defendants have not answered and, perhaps, have not been served.[2] One defendant, Allied Bank International, apparently giving the complaint a more pragmatic treatment than most attorneys would dare venture, merely returned the summons and complaint to the Clerk of the Court with a letter stating:

"Our bank has no knowledge of, information on, or relationship with any of the parties or individuals named therein."[3]

Confronted with an apparent absurdity, the Court is tempted to give this matter the summary treatment which Judge Owen recently afforded the plaintiff in his action against the Federation of Jewish Philanthropies of New York, wherein he simply stated:

"The facts are undisputed. Eli Raitport is a frequent *pro se* plaintiff in the federal courts. He thinks in large terms naming substantial defendants, alleging grandiose theories, seeking enormous damages and has been uniformly unsuccessful. Mr. Raitport now seeks to compel defendant Federation of Jewish Philanthropies of New York to finance his incursions in this Court in the field of antitrust enforcement. There are no facts, however favorably viewed, that support his cause of action.

Summary judgment is therefore granted to defendant."

*Raitport v. Federation of Jewish Philanthropies of New York*, 76 Civ. 5001, (S.D. N.Y., Dec. 27, 1976).

However, in deference to the many attorneys who labored mightily over their motion papers, and having only a few hundred other more meritorious causes of action with which to concern itself, the Court will address itself to the motions.

The three most commonly stated grounds for dismissing the action or granting summary judgment are:

1. that the plaintiff is collaterally estopped from maintaining this action by reason of two prior, identical actions where judgment has been entered against him. (Eighteen of the moving parties raise this issue);

2. that the action is sham and frivolous. (Fifteen of the moving parties argue this point);

3. that venue is improper as to national banks established in other states and districts under the venue provision of the National Bank Act, 12 U.S.C. § 94. (Six or seven defendants raised this point).

A number of other points are raised by various defendants in seeking the dismissal of the action, among which are: that they have never heard of the plaintiff because he has never applied to them for loans; that the complaint fails to state a cause of action under the antitrust laws; and that certain

---

**2.** One defendant has an extension of time to answer until these motions are decided. Since the Marshal's return has not as yet been made, it is impossible to forecast how, if at all, he will attempt service on the last named defendant:

"several hundred unnamed foundations, investment portfolio of which are managed by said banks individually, severally or jointly."

**3.** This will be treated as a general denial.

of them are Edge Act banks which, by law, are not allowed to make the types of loans which plaintiff sues them for refusing to make. 12 U.S.C. §§ 611–631. Fascinating (and perhaps meritorious) though these arguments may be, for reasons stated hereafter it is unnecessary to consider them.

### Collateral Estoppel

Plaintiff has instituted a number of actions against banks, government agencies, charitable organizations, corporations and others because of his apparent inability to obtain financing for his inventions. At this point, in a *Raitport* decision, it is customary to recite his many other *pro se* litigations.[4] No useful purpose would be served by this. The list would, in any event, be inaccurate because many of the decisions are not reported and there are other, contemporaneous suits, some pending in this court, which have not been concluded. We will, however, concentrate on two prior cases where the same relief was sought from essentially the same defendants.

In *Raitport v. Chase Manhattan Capital Corp.*, 388 F.Supp. 1095 (S.D.N.Y.1975) (known to the cognoscente as *"Raitport 74"*), plaintiff sued investment subsidiaries of several of the banks named as defendants herein. Judge Knapp, after finding that plaintiff did not have a claim under several of the bases set forth,[5] did find that a cause of action had been stated under the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.* He found, however, that despite extensive discovery the plaintiff had been unable to offer any evidence whatsoever to support his allegation that the defendants were conspiring with other financial institu-

tions to monopolize certain industries and to refuse to extend him credit. Accepting the contention (specifically denied by many of the defendants here) that they had refused to make loans to the plaintiff, Judge Knapp concluded that such parallel business behavior, without more, does not establish an illegal conspiracy in violation of the Sherman Act. *Raitport v. Chase Manhattan Capital Corp., supra* at 1100. He, therefore, granted summary judgment. The Court of Appeals, by order dated May 20, 1975, dismissed the appeal pursuant to 28 U.S.C. § 1915(d). The Supreme Court denied a petition for *certiorari*.

Plaintiff wasted no time in commencing a new action. This time the defendants were "commercial banks located within this district as a class, and Foundations Operating Investment Portfolios and managed directly or indirectly by above said banks as a class Defendants." In this action, *Raitport v. Commercial Banks Located Within This District*, 391 F.Supp. 584 (S.D.N.Y.1975), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2213, 48 L.Ed.2d 822 (1976) (known among *Raitport* afficionados as *"Raitport 75"*), the First National City Bank had the dubious distinction of being named as the representative party for the class of defendant banks and foundations.[6] The "representative defendant" moved for summary judgment on grounds of *res judicata* because of Judge Knapp's decision in the *"Raitport 74"* case. Judge Werker did not find the earlier decision to be *res judicata* since the First National City Bank, *per se*, had not been named as a defendant, although one of its wholly owned subsidiaries was. He found,

---

4. To mention only a few that had a theme similar to this case: his action against the Small Business Administration to compel it to approve his loan application, *Raitport v. Small Business Administration*, 380 F.Supp. 1059 (E.D.Pa.1974); his similar action against the National Bureau of Standards in *Raitport v. National Bureau of Standards*, 378 F.Supp. 380 (E.D.Pa.1974); and his action against the major automobile manufacturers for refusing to market his inventions, *Raitport v. General Motors Corp.*, 366 F.Supp. 328 (E.D.Pa.1973), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 470, 46 L.Ed.2d 400 (1975).

5. The Small Business Act, 15 U.S.C. § 631, *et seq.*, the Small Business Investment Act of 1958, as amended, 15 U.S.C. § 681, *et seq.*, the Economic Stabilization Act, 12 U.S.C. § 1904 note (1975 Supp.) and the Civil Rights Act, 42 U.S.C. § 1985.

6. First National City Bank is also named as a defendant herein, but it has now dropped from the first named bank to the last named bank in the caption.

however, that the plaintiff was collaterally estopped from maintaining a further action since the only possible theory of recovery was the conspiracy to monopolize and refusal to finance plaintiff's businesses, which was the essential allegation of the new action with the cast of defendants somewhat altered. In pertinent part, his decision was as follows:

> "[T]he fact that Citibank was not a party to the first action does not necessarily prevent it from asserting collateral estoppel since the requirement of mutuality has been liberalized. [Citations omitted.]
>
> The critical factor to be determined is whether the issues raised in this action were actually litigated and determined in the prior action. As discussed *supra* the only possible theory of recovery alleged in the prior suit was the antitrust claim of an 'unscrupulous conspiracy' to monopolize certain industries and refusals to finance the plaintiff's businesses. These very same allegations, form the basis for plaintiff's complaint in this action. [Footnote omitted.] Again a conspiracy to monopolize the same industries coupled with refusals to deal and discrimination against the plaintiff and other new manufacturing businesses is alleged. The core of both complaints is that over a period of years the plaintiff has asked the defendants in this action and the prior action to finance firms organized by the plaintiff, and that every defendant has refused to provide financing. . . .
>
> What plaintiff has done in this action is simply to 'switch adversaries'. . . . The whole thrust of this action is the same as the prior action—one huge conspiracy to prevent plaintiff from manufacturing his inventions. As Professor Currie has noted:
>
>> 'In a sense, the plaintiff who proceeds against one adversary and loses, only to try again against another, may be guilty of the same kind of trifling with the public interest against piecemeal litigation that gives rise to the rule against splitting a cause of action.'

Currie, Mutuality of Collateral Estoppel: Limits on the *Bernhard* Doctrine, 9 Stan. L.Rev. 281, 301 (1957) (footnote omitted).

> Plaintiff, no stranger to the federal courts—*see Raitport v. General Electric Co.*, CCH 1974–2 Trade Cases ¶ 75.313; *Raitport v. General Motors Corp.*, 366 F.Supp. 328 (E.D.Pa. 1973)—had a full and fair opportunity to litigate the same claims in his prior suit. He cannot avoid the results of that suit by merely suing the parent banks and embellishing on his theories."

*Raitport v. Commercial Banks Located Within This District, supra* at 587.

It is undisputed that the same cause of action is being asserted for the third time against the banks, and has been asserted four or five other times against different financial and governmental organizations. During the course of oral argument, the plaintiff was asked whether the theory of the complaint was not identical. He replied "the theory I did not change." He cannot be allowed to litigate this claim a third time.[7]

Plaintiff argues that summary judgment is not appropriate since the prior adjudications were not on the merits and, therefore, collateral estoppel does not apply. This argument was specifically rejected by Judge Werker in "Raitport 74". Plaintiff also argues that because the antitrust violations are "continuous," thereby giving rise to more than one cause of action, he cannot be estopped from bringing consecutive actions. Some of the causes of action in the complaint are specifically limited to times prior to the earlier decisions. Others, however, allege in vague terms that the acts of the defendants occurred "since the year 1969" (third cause of action), or "since the year 1967" (fourth cause of action) so that, arguably, continuing wrongs are alleged. For

---

7. Indeed, so routine is this exercise that plaintiff has a form-typed affidavit in support of his motions to be allowed to proceed without paying costs, in which he simply inserts the name of the new defendants, the new district, etc.

this limited reason, we will turn to the next point.

### The Sham and Frivolous Action

■ In *"Raitport 74"* Judge Knapp found a total absence of any evidence to support the antitrust claims. Plaintiff has been allowed, once again, to commence his action as a *pro se* litigant in *forma pauperis*. However, Title 28 U.S.C. § 1915(d) allows the court to dismiss such actions if it is satisfied that the action is frivolous.

The instant action has cost the plaintiff nothing but some time and postage. The defendants, collectively, by a conservative estimate, have already spend tens of thousands of dollars retaining attorneys, opening files, filing answers and making motions. This Court and other courts have already been burdened with numerous actions accusing various defendants of having conspired to prevent the plaintiff from financing his inventions. None of these have been successful, although the expense and inconvenience to all involved have been considerable. These litigations have served only to publicize Mr. Raitport and his business ventures.

This is not a case involving an uneducated, naive plaintiff who may have inartistically stated a valid cause of action. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Mr. Raitport has spent more time in court than many lawyers. If there existed any viable cause of action against these defendants he is capable of discovering it and stating it. As Chief Judge Kaufman once said with respect to another active *pro se* litigant:

"He comes before this Court wearing the cloak of a *pro se* applicant, and seeks to extract from us the solicitude ordinarily afforded one appearing without counsel. But this should not shield him from rebuke when merited. He is an intelligent, able and sophisticated litigant, who is no stranger to this Court, having appeared frequently in his own behalf both in the District Court and the Court of Appeals. We would expect that one possessed of his background would be conscious of the outer limits of forceful advocacy and fully aware when his acts transgress those limits. Moreover, we are not to be manipulated by resourceful but meritless moves . . . [which] serve only to distract us from important judicial business."

*Ackert v. Bryan*, Docket No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring.) The very theory of the action, that banks are refusing to make profitable loans and are intentionally making bad ones, boggles the imagination.

Even without the learned opinions of Judge Knapp and Judge Werker as guides, this Court would have no hesitation in denominating the instant action as sham and frivolous.

### Venue

■ An argument can be made that those banks not doing business in New York were not involved in the earlier litigation and that suit against them should not be collaterally barred. About the only interesting legal question raised by these motions is the defense of the national banks, chartered in other states, that venue is improper as to them and they may not be sued, even as part of an alleged conspiracy, in a district other than that in which they are established. Actions against these banks are governed by Section 94 of the National Bank Act, 12 U.S.C. § 94, which provides:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

Plaintiff contends that the more general venue provisions of the antitrust laws override the provisions of the National Banking Act. However, this argument was specifically rejected by the Supreme Court last year in its decision in *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 96 S.Ct.

1989, 48 L.Ed.2d 540 (1976). The Securities and Exchange Commission had argued that enforcement of the securities laws would be hindered by the inability to sue geographically disbursed banks in one proceeding. While the Court acknowledged the problem, it concluded that "[p]olicy arguments such as this are more appropriately addressed to Congress than to this court." *Id.* at 156 n. 12, 96 S.Ct. at 1994 n.12. That the Supreme Court's holding is applicable to antitrust cases has been confirmed by the Seventh Circuit's subsequent ruling in *Fisher v. First Nat. Bank of Chicago*, 538 F.2d 1284 (7th Cir. 1976). Consequently, as to the national bank defendants not organized in this district, the venue is clearly improper.

### Disposition of the Action As to Non-Moving Defendants

 For the reasons stated above, the motions to dismiss and for summary judgment must be granted as to the moving defendants.[8] The question remains as to what should be done with the remaining defendants who have not as yet moved (or the return date of whose motion has not arrived).

This Circuit has a rather strict rule against the Court dismissing actions *"sua sponte." Cunningham v. Ward*, 546 F.2d 481 (2d Cir. 1976); *Lewis v. State of New York*, 547 F.2d 4 (2d Cir. 1976). However, this issue has already been raised and briefed. Most of the remaining defendants who have answered but not moved have asserted the collateral estoppel defense. Others have asserted the venue defense, and virtually all have claimed that the complaint fails to state a cause of action. On the basis of this decision, it can be anticipated that in due time all will make similar motions. No conceivable purpose can be served by awaiting the receipt of motion papers from the less diligent counsel. Indeed, all that will be accomplished is to increase the legal fees of defendants who should never have been sued in the first place.[9]

The collateral estoppel defense is clearly applicable to all of the commercial banks doing business in this district. (Probably the plaintiff is collaterally estopped as to the other banks also.) As to those who do not do business here, either the venue defense or a total lack of jurisdiction would be a defense. From the standpoint of all defendants, the action is sham and frivolous. 28 U.S.C. § 1915(d).

The defendants' motions are granted. The action is dismissed as to all defendants.

SO ORDERED:

---

**8.** Of the four moving defendants who did not move on the grounds of collateral estoppel, three of them raised the venue issue and the complaint against the fourth was dismissed, on consent of the plaintiff, because it was an Edge Act bank not licensed to make loans of the type sought by the plaintiff.

**9.** For some it is the second or third time they (or their subsidiaries) have been sued.