Eli RAITPORT, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 93–357C.

United States Court of Federal Claims.

April 13, 1995.

Eli Raitport (pro se), Brooklyn, NY, for plaintiffs.

Robert G. Hilton, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger and Director Vito J. DiPietro, for defendant; Thomas J. Byrnes, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

Plaintiffs in this case seek damages for the alleged infringement by the United States of Eli Raitport's patents [1]. The case is currently before the court on plaintiffs' motion to recuse Judge Tidwell, defendant's motion to dismiss all named plaintiffs except Eli Raitport, and defendant's motion for summary judgment. For the reasons that follow the court denies plaintiffs' motion to recuse, and grants defendant's motion for summary judgment. Defendant's motion to dismiss all named plaintiffs except Eli Raitport is dismissed as moot.

## FACTS

On September 28, 1971, patent 3,609,266 ('266) was issued to Eli Raitport. The patent describes a snap mechanism for use with an electrical switch or valve. Patent 3,749,354 ('354), a continuation of patent '266, was issued on July 3, 1973.

On June 4, 1993, plaintiffs, appearing *pro se* by Eli Raitport, filed a complaint in this court, alleging that all electronic equipment used by the United States, and manufactured since 1980, contained a switch built in accordance with patents '266 and '354. Plaintiffs also alleged, *inter alia,* that the United States masterminded World War I and II, destroyed the economy of Europe, and "refrained [sic] Plaintiffs from disclosing their inventions." The court was unable to discern a basis for subject matter jurisdiction and dismissed the complaint. *Raitport v. United States,* Nos. 93–329C, 93–348C, 93–357C (Fed.Cl. June 14, 1993). On appeal the Federal Circuit concluded that plaintiffs' claim was for patent infringement and remanded

---

1. It is not clear that plaintiffs, other than Eli Raitport, have standing to bring this action under 28 U.S.C. § 1498. Because of the outcome of this motion, the court need not address that issue.

the case to this court. *Raitport v. United States*, 29 F.3d 644 (Fed.Cir.1994).

In lieu of filing an answer, defendant moved for summary judgment on the grounds of laches. In support of its motion defendant maintained that plaintiffs knew, or should have known, of the alleged acts of infringement since at least 1985, but failed to file this suit until June 1993. Defendant produced evidence that in 1985 plaintiffs sued various manufacturers for allegedly infringing patents '266 and '354. *Raitport v. I.B.M.*, No. 85 Civ. 8847 (S.D.N.Y. filed Nov. 8, 1985). In the 1985 complaint plaintiffs alleged that Mr. Raitport was "responsible for the development of [the] consumers' electronic industry," and patents '266 and '354 are the "backbone of the consumer electronic industry."

Defendant also noted that in a May 1993 complaint filed in this court Mr. Raitport alleged that he moved his company, Scientronic Corporation, to Europe in 1978 to avoid the alleged need to bribe U.S. judges to hear his patent infringement claims. *Scientronic Corp. v. The United States*, No. 93–329C (Fed.Cl. filed May 24, 1993) (dismissed).

In response, plaintiffs submitted two affidavits of Eli Raitport,[2] largely filled with irrelevant and impertinent accusations about "thieves," "racketeers," and "kickbacks." Mr. Raitport conceded that as early as 1985 he believed switches based on patents '266 and '354 were incorporated into virtually all electronic devices. He maintained, however, that a reasonable person would not have assumed that the government was purchasing some of these allegedly infringing electronics.[3]

Mr. Raitport also contended that the scores of lawsuits filed by plaintiffs over the years demonstrate that plaintiffs have aggressively tried to protect their patent rights, and the failure to file claims in this court prior to June 1993 was not unreasonable because plaintiffs were precluded from filing claims in the United States District Court for the Eastern District of New York without first obtaining leave. Finally, plaintiffs maintained that the government was not prejudiced by the delay because the evidence was a matter of public record.

The various papers filed by Mr. Raitport were littered with unsupported, vitriolic, defamatory remarks about all three branches of federal government. Although an exhaustive recitation of the objectionable statements in plaintiffs' papers is beyond the scope of this opinion, the court finds it appropriate to provide a representative sample of the allegations in plaintiffs' papers.

In response to defendant's motion for summary judgment plaintiffs alleged that "each and every [J]ustice of the Supreme Court, each and every judge of the United States [C]ourt of Appeals, 2nd and Fed. Circuits, and many U.S. district judges, and officers of the administration branch are proven thieves and racketeers...." In addition, Mr. Raitport accused opposing counsel of implying that "Federal judges, up [to] and including the Supreme [J]ustices, Members of the House and Senators, purchasing officers up [to] and including Members of the Cabinet are racketeers, dishonorable creatures and despicable thieves." Mr. Raitport also stated:

**2.** Both documents provided that:

> I, hereby undersigned, Eli Raitport, under penalty of perjury, affirm and say that I am one of the Plaintiffs in the above captioned case, and I am representing the all [sic] other plaintiffs, and that I am well familiar with all [the] proceeding[s] of this case, and am well qualified and competent to make the foregoing Affidavit.

Neither affidavit provided that the statements therein were made under the penalties for perjury.

**3.** Mr. Raitport also lambasted defendant for interpreting plaintiffs' claims to be limited to in-

fringing switches in electronics. He stated that his switches are also:

> very advantageous for the automobile industry, machine tools, aviation industry[,] medical industry and many others. Even the elevators in the building housing the offices of the U.S. Attorney in Brooklyn are equipped with my switches.
>
> ... Presumably, most of the apparatuses— electrical, pneumatic, small hydraulic[—]built by the government for research purposes[] since my Patents were issued[,] are built with my switches.

the above said gentlemen and ladies are not far removed from cannibals, who ate their victims to prevent them from calling to justice after death. So did the judges foreclosing [sic] Plaintiffs' access to court. From that follows that the Congress, the judges, the [J]ustices and high officers are dishonorable creatures—a description of dignity for cannibals.

As part of the same charge he accused one of the judges on the Second Circuit Court of Appeals of "direct[ing] or acquies[ing]" in an alleged attempt on Mr. Raitport's life. In addition to repeating many of these allegations in response to defendant's motion to dismiss all named plaintiffs except Eli Raitport, Mr. Raitport also accused opposing counsel of "lying" about both law and facts, and suggested that the Attorney General "hired for the job of assistants 'Highest bidders' of bribe without considering qualifications."

On January 4, 1995, pursuant to RCFC 12(f) and 83.1(a)(4) the court ordered plaintiffs to delete all "redundant, immaterial, impertinent, defamatory and scandalous statements made about all courts, judges, Members of Congress and the Senate of the United States, opposing counsel and other officers of the executive branch" from papers submitted to the court. Plaintiffs were further ordered to provide a factual or legal basis for any such statements remaining. The order also provided that court approval was required for the filing of briefs and documents received from plaintiffs. Plaintiffs did not submit any revised documents in accordance with the court's order, but instead responded by filing a motion for recusal pursuant to 28 U.S.C. § 455.

## DISCUSSION

### 1. *Recusal Under 28 U.S.C. § 455*

Under 28 U.S.C. § 455(a) a judge of the United States is required to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455 (1988).

■ The test for recusal under 28 U.S.C. § 455 is objective. Recusal is appropriate if " 'a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.' " *Glass v. Pfeffer,* 849 F.2d 1261, 1268 (10th Cir.1988) (quoting *Hinman v. Rogers,* 831 F.2d 937, 938 (10th Cir.1987)). In ruling on a motion under 28 U.S.C. § 455 the court is not required to accept the facts alleged as true. *Id.* A judge who determines there are no legitimate grounds for recusal has a duty to deny the motion. *United States v. Anderson,* 433 F.2d 856, 860 (8th Cir.1970); *Martin–Trigona v. Lavin,* 573 F.Supp. 1237, 1243 (D.Conn. 1983), *appeal dismissed,* 770 F.2d 157 (2d Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *see also Raitport v. Bradley,* 446 F.Supp. 129, 131 (E.D.Pa.1978) (affidavit not sufficient to require recusal under 28 U.S.C. § 144).

■ Plaintiffs' motion for recusal is based in part on the charge that this court breached its oath of office by initially concluding that plaintiffs' complaint was not within the jurisdiction of this court. Plaintiffs also alleged that this court breached its oath of office by issuing the January 4, 1995 order, directing the clerk to obtain court approval before filing plaintiffs' briefs and documents. They concluded, therefore, that this court stole its salary. Based on these two so-called acts of "stealing," plaintiffs argued that this court had engaged in a pattern of racketeering, and must recuse itself because it might be indicted.

■ An erroneous ruling unfavorable to a party is not grounds for recusal. *Anderson,* 433 F.2d at 860; *Raitport v. Bradley,* 446 F.Supp. at 131. Further, "a litigant's intemperate and scurrilous attack on a presiding judge [is not] a valid ground for recusal." *Martin–Trigona,* 573 F.Supp. at 1243. In this case, a reasonable person, aware of all the facts would not question the impartiality of this court based on plaintiffs' unsupported, scandalous, and spurious accusations. *See id.; see also Glass,* 849 F.2d at 1268.

■ The court's January 4, 1995 order, directing the clerk to obtain court approval prior to filing documents submitted by plaintiffs, also does not give rise to the inference that this court has a personal bias against plaintiffs. Under RCFC 83.1(a)(4) briefs and

memoranda must be "free from burdensome, irrelevant, immaterial, and scandalous matter." Pursuant to RCFC 83(a)(4) and 12(f) the court may ignore documents that fail to meet this requirement.

The documents filed by plaintiffs fall squarely within the prohibition of RCFC 83(a)(4). The court does not believe that a reasonable person would conclude that personal bias or an attempt to obstruct justice motivated the court's January 4, 1995 order. *Cf. Raitport v. Bradley*, 446 F.Supp. at 131 (court not required to recuse itself based on an order issued in compliance with the local rules). Because the court concludes that plaintiffs' motion to recuse is unsupported by facts suggesting this court has a personal bias against plaintiffs, and does not appear to be made in good faith, *see, e.g., Raitport v. General Elec. Co.*, 1974-2 Trade Cas. (CCH) ¶ 75,313, 1974 WL 945 (S.D.N.Y. Aug. 1, 1974), plaintiffs' motion to recuse is denied.

2. *Laches*

■■■ Defendant in this case moved for summary judgment on the grounds of laches. Laches is "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar [to suit]." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028-29 (Fed.Cir.1992) (in banc). The six-year statute of limitations applicable in patent infringement suits does not preempt the equitable defense of laches. *Id.* at 1030-31. When it applies, the doctrine of laches prevents a patentee from recovering damages based on infringement occurring prior to suit. *Id.* at 1041.

a. Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *see also Jamesbury Corp. v. Litton Indus. Prods. Inc.*, 839 F.2d 1544, 1548 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988). The movant has the initial burden to identify from the record the absence of material issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). If the movant successfully shows that there is no evidence of an essential element to the opposing party's claim, the nonmoving party must come forward with admissible evidence of "specific facts showing that there is a genuine issue for trial." *Id.; see also Jamesbury*, 839 F.2d at 1548.

A properly supported motion for summary judgment will not be defeated merely because the non-movant "show[s] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1985); *see also Raitport v. General Motors Corp.*, 450 F.Supp. 1349, 1355 (E.D.Pa.1978) (no genuine issue based on "unsubstantiated conspiratorial allegations"). In deciding a motion for summary judgment, the court does not "weigh the evidence and determine the truth of the matter but [only] determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Further, the court must "view the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1141 (Fed.Cir.1986) (citations omitted); *see also Raitport v. General Motors*, 450 F.Supp. at 1355. Based on the standard of proof that would apply at trial, the court should ascertain whether there is sufficient evidence to warrant a directed verdict. *Anderson*, 477 U.S. at 254-55, 106 S.Ct. at 2513-14.

b. Presumption of Laches

■■■ The use of laches in a particular case is committed to the discretion of the trial court and must not be based on rigid rules. *A.C. Aukerman v. R.L. Chaides*, 960 F.2d at 1032. Defendant has the burden of laying the foundation for the doctrine of laches by establishing that after plaintiffs knew or, in the exercise of due diligence, should have known, of the claim, plaintiffs unreason-

ably delayed filing suit, and defendant was materially prejudiced by the delay. *Id.* (citations omitted). A rebuttable presumption of laches arises upon proof that a plaintiff, without good excuse, delayed filing suit for more than six years. *Id.* at 1035; *De Graffenried v. United States,* 20 Cl.Ct. 458, 487 (1990); *see also Pratt & Whitney Canada Inc. v. United States,* 12 Cl.Ct. 221, 222 (1987).

■ Defendant has submitted evidence that, as early as 1985, plaintiffs believed patents '266 and '354 were being infringed to such an extent that they formed the "backbone of the consumer electronic industry." Further, plaintiffs' complaint alleged that virtually every electronic device used by the United States that was manufactured since 1980 infringes Mr. Raitport's patents. Plaintiffs also alleged that Scientronic Corporation moved to Europe because of the fear that they would not be able to adjudicate patent infringement claims in the United States unless they bribed judges. The date of the alleged move was 1978.

In response to defendant's motion, Mr. Raitport submitted two affidavits. In the first affidavit Mr. Raitport's sole reference to the arguments raised by defendant was his statement that the rule of "constructive notice" was created for the "purpose of extortion of bribe." The affidavit did not, however, challenge defendant's argument that plaintiffs had constructive notice of the alleged infringement on or before 1985.

The second "affidavit," stripped of most of its vitriolic, unsubstantiated attacks on all three branches of government, claimed that equipment manufactured with Mr. Raitport's switch was about fifteen times less costly to manufacture than conventional equipment. Because the equipment was so inexpensive to produce, manufacturers allegedly were able to amass large profits by selling the equipment at high prices. Raitport maintained that the manufacturers then used these alleged profits to bribe purchasers to pay the higher prices. Raitport alleged, therefore, that he could not have suspected infringement by the United States until he "discovered" that the members of all three branches of government were "racketeers," and then inferred that defendant had accepted bribes as an inducement to purchase the equipment. Mr. Raitport's conclusory statements that he did not suspect the alleged infringement until he "discovered" that U.S. officials were "racketeers," do not establish a genuine issue of material fact regarding the date plaintiffs should have known of the basis of their claim. *See Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56; *cf. Raitport v. Chase Manhattan Capitol Corp.,* 388 F.Supp. 1095, 1099–1100 (S.D.N.Y.1975) ("[T]he only 'evidence' the plaintiff proffers could by no stretch of the imagination meet his burden of proof under the statute. His entire case rests on the assumption that his inventions are so economically promising that the only explanation for the defendants' refusal to finance them must be the existence of an 'unscrupulous' conspiracy.")

Based on evidence of Mr. Raitport's prior statements the court finds that defendant has adequately shown that plaintiffs would have known of the infringement claim against the United States by 1985 if they had exercised reasonable diligence. Plaintiffs have filed numerous lawsuits in which they alleged that Mr. Raitport's switches were "better and more economical" than alternative products, *see Raitport v. General Motors,* 450 F.Supp. at 1354, would result in decreased costs to consumers, *see Raitport v. General Elec. Co.,* 1974–2 Trade Cas. (CCH) ¶ 75,418, 1974 WL 986 (Dec. 5, 1974); *Raitport v. General Motors,* 366 F.Supp. 328, 329 (E.D.Pa.1973), and are the "backbone of the consumer electronics industry," App. at 6. Plaintiffs' response to defendant's motion for summary judgment also alleged that the patents were the "dream of every experimenter." In addition, plaintiffs have alleged that in 1978 they moved to Europe because of difficulties enforcing Mr. Raitport's patents in the United States, and that the government has probably infringed Mr. Raitport's patents since they were issued in 1971 and 1973. Further, in *Raitport v. I.B.M.,* filed in 1985, plaintiffs alleged that certain defendants had obstructed justice by interfering with plaintiffs' ability to seek redress for patent infringement claims.

Accepting Mr. Raitport's allegations as true for the purpose of this motion, the court

concludes there is ample evidence that by 1985 plaintiffs possessed sufficient facts to be required to investigate whether they had a claim against the United States. Plaintiffs' blind refusal to acquire actual knowledge of infringement was not reasonable, and the court finds that plaintiffs had constructive knowledge of the patent infringement claim by 1985. *See Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,* 988 F.2d 1157, 1161 (Fed.Cir.1993).

### c. The Presumption of Laches Can Be Rebutted

Because the elements of laches are presumed based on plaintiffs' eight year delay in filing suit, plaintiffs bear the burden of producing sufficient evidence to preclude a directed verdict on the elements of laches. *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1293 (Fed.Cir.1992); *A.C. Aukerman v. R.L. Chaides,* 960 F.2d at 1037–38. Plaintiffs can meet this burden by producing some evidence to support a finding that either the eight year delay was reasonable, or that defendant suffered no prejudice from the delay. *Hemstreet,* 972 F.2d at 1293; *A.C. Aukerman v. R.L. Chaides,* 960 F.2d at 1038. As *Aukerman* made clear, however, at all times the burden of proving the defense of laches remains with the defendant. *A.C. Aukerman v. R.L. Chaides,* 960 F.2d at 1038. Therefore, to overcome the presumption of laches plaintiffs need not *prove* the delay was reasonable or that defendant was not prejudiced, they must simply produce sufficient evidence to show there is a genuine issue of fact as to one of these elements. *Id.*

In his affidavit Mr. Raitport argued that the numerous cases filed by plaintiffs are evidence that *"Plaintiff[s] vigorously sought to protect their Rights* stemming from [the] patent." Plaintiffs did not provide the court with any documentation supporting this statement, nor did they reference any specific cases. With the exception of the cases filed in 1985 and 1993, the court is unaware of any cases filed by plaintiffs under a theory of patent infringement. Rather, most of the claims filed by plaintiffs appear to predate the delay in this case and also appear to be based on a theory that various defendants refused to deal with Mr. Raitport. *See, e.g., Raitport v. General Motors,* 450 F.Supp. at 1351; *Raitport v. General Electric,* 1974–2 Trade Cas. (CCH) ¶ 75,313, 1974 WL 945 (August 1, 1974). Further, although a delay in filing while a plaintiff engages in other litigation to enforce its patent rights may in some circumstances be reasonable, see *Hemstreet,* 972 F.2d at 1293; *see also A.C. Aukerman v. Miller Formless Co.,* 693 F.2d 697, 700 (7th Cir.1982), plaintiffs submitted no evidence to suggest that the 1985 case was ongoing in the six year period before the complaint was filed in this court. Because plaintiffs have the burden to come forward with sufficient evidence to avoid a directed verdict, these conclusory statements that the delay resulted from other litigation are insufficient to create a genuine issue of fact that the delay was reasonable.

Plaintiffs also did not establish a genuine issue of fact based on the charge that plaintiffs are precluded from filing suit in the Eastern District of New York. As an initial matter, the court notes that plaintiffs are only precluded from filing suit without obtaining prior court approval. It is not reasonable to infer that the district court would deny approval in the event plaintiffs file a non-frivolous claim in that court. Plaintiffs' assumption that it was futile to file suit in *this* court based on the order in the Eastern District also was not reasonable. Finally, even if plaintiffs' assumptions *were* reasonable, this would only excuse nine months of the eight year delay. Therefore, the court concludes that plaintiffs have not produced sufficient evidence to rebut the presumption that the eight year delay was unreasonable.

Although plaintiffs did not produce evidence that the delay was reasonable, the presumption of laches can also be destroyed if plaintiffs produce some evidence that defendant was not prejudiced by the delay. Plaintiffs responded to the government's charge of prejudice by stating that "[d]efendants contention about [the] Government suffering prejudice is incomprehensible. Every thing in this case, is a matter of official records. No one's memory is involved. Therefore, this government's allegation need

not to [sic] be replied to." The conclusory statement that defendant suffered no prejudice is insufficient to rebut the presumption of laches. *See, e.g., A.C. Aukerman v. Miller*, 693 F.2d at 699 (citations omitted).

The defense of laches will also be precluded if plaintiffs produce proof that defendant engaged in egregious behavior. *A.C. Aukerman v. R.L. Chaides*, 960 F.2d at 1033. Although plaintiffs have accused defendant of accepting bribes as an inducement to purchase infringing products, these accusations rest solely upon inferences drawn by Mr. Raitport. By order dated January 4, 1995, the court directed plaintiffs to provide a factual or legal basis for these allegations. Plaintiffs refused to resubmit papers in accordance with the court's order. The court finds, therefore, that plaintiffs' unsubstantiated attacks on defendant fall far short of evidence sufficient to create a genuine issue of fact.

> d. The Court Has the Discretion to Determine Whether Laches is Appropriate On the Facts of a Particular Case

■ Even though plaintiffs have not rebutted the presumption of laches, the court still must inquire whether, on the facts and circumstances of this case, application of the doctrine is equitable. *A.C. Aukerman v. R.L. Chaides*, 960 F.2d at 1036. The court concludes that based on a review of all the facts known to the court, defendant has met its burden of proving that laches is appropriate.

Patent '266 was issued in 1971 and patent '354 was issued in 1973. Plaintiffs have alleged that the government has presumably been infringing on those patents since they were issued, and that most equipment manufactured since 1980 infringes Mr. Raitport's patents. Despite the fact that the United States was allegedly infringing on Mr. Raitport's patents for most of the patent periods, and although plaintiffs should have known of the infringement of both patents since at least 1985, they waited to sue until 1993. This was three years after patent '354 expired and five years after patent '266 expired. There is no evidence in the record that the United States ever was made aware, prior to instigation of this suit, of the possibility that it was using infringing equipment. *Compare Hemstreet*, 972 F.2d at 1294; *Tripp v. United States*, 406 F.2d 1066, 1071, 186 Ct.Cl. 872 (1969). The court notes that at this late date it would be almost impossible for the government to mount a full and fair defense to plaintiffs' charges. *See A.C. Aukerman v. R.L. Chaides*, 960 F.2d at 1035; *A.C. Aukerman v. Miller*, 693 F.2d at 701.

In the ordinary case the court would be reluctant to find laches where a *pro se* plaintiff seeks to enforce rights against the United States. The court notes that *pro se* plaintiffs will generally be held to a less strict standard than parties represented by attorneys. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Roche v. United States Postal Serv.*, 828 F.2d 1555, 1558 (Fed.Cir.1987). The court's reluctance also stems from a concern that individual plaintiffs are likely to be intimidated by the size and power of the United States.

The latitude given *pro se* plaintiffs, however, is not without limits. The court's concerns for *pro se* plaintiffs are simply not implicated in this case. Eli Raitport has over twenty years legal experience gained from filing *pro se* lawsuits. *See Raitport v. General Motors*, 366 F.Supp. 328 (E.D.Pa. 1973). He is a " 'frequent pro se plaintiff in the federal courts. He thinks in large terms naming substantial defendants, alleging grandiose theories, seeking enormous damages and has been uniformly unsuccessful.' " *Raitport v. Chemical Bank*, 74 F.R.D. 128, 130 (S.D.N.Y.1977) (quoting *Raitport v. Federation of Jewish Philanthropies of New York*, 76 Civ. 5001 (S.D.N.Y. Dec. 27, 1976)). The court notes that by 1977, *Raitport v. Commercial Banks Located Within This Dist. as a Class*, 391 F.Supp. 584 (S.D.N.Y. 1975), was being referred to as "Raitport 75." *See Raitport v. Chemical Bank*, 74 F.R.D. at 131. Further, Mr. Raitport's delay in filing suit cannot be charged to the fear of challenging a mighty adversary. There is no evidence that Mr. Raitport has ever been deterred from filing a lawsuit based on the relative size of his opponents, *see, e.g., Scientronic Corp. v. AT & T Incorp.*, No. 91 Civ. 1146, 1993 U.S.Dist. LEXIS 20456 (E.D.N.Y.

May 24, 1993), or the complexity of the legal theories before him, *see, e.g., id.* at *6–7 (claims of infringement, contributory infringement, fraud, conspiracy to deceive and defraud, destruction of business, and obstruction of justice); *Ste Ame Isorait v. Atlantic Mut. Co.,* No. 92–3981, 1993 WL 37330 *1, 1993 U.S.Dist. LEXIS 1388 *1 (E.D.N.Y. Feb. 4, 1993) (RICO action "recount[ing] a series of seemingly (and admittedly) unrelated events that are unified only by their result: alleged interference with plaintiff Raitport's ability to carry on his business"); *Raitport v. Provident Nat'l Bank,* 451 F.Supp. 522, 524 (E.D.Pa.1978) (claims under Civil Rights Act and Sherman Anti-trust Act); *Raitport v. General Motors,* 450 F.Supp. at 1351) (same).

The court finds that it is inappropriate, therefore, to shelter Mr. Raitport from the consequences of his delays merely because he is appearing *pro se.* As the court noted in *Raitport v. Chemical Bank.*

> This is not a case involving an uneducated, naive plaintiff who may have inartistically stated a valid cause of action. Mr. Raitport has spent more time in court than many lawyers. If there existed any viable cause of action against these defendants he is capable of discovering it and stating it.

74 F.R.D. at 133 (citations omitted).

Mr. Raitport is apparently not a man of great wealth, *see Raitport v. General Elec. Co.,* 1974–2 Trade Cas. (CCH) ¶ 75,313, 1974 WL 945 (August 1, 1994). Nevertheless, the court notes that Mr. Raitport's financial constraints have apparently not prevented his litigation efforts in the past. Therefore, the court is unable to conclude that the delay in bringing this suit is attributable to, or excused by, Mr. Raitport's limited economic means.[4]

Further, because Mr. Raitport has alleged extensive government infringement since at least 1980, his delay in filing cannot be justified by a desire to wait until he can determine whether the expected recovery would exceed the expenses of suit. *See Tripp,* 406 F.2d at 1071.

After full consideration of all the facts and circumstances of this case, the court concludes there is no genuine issue of material fact concerning whether plaintiffs knew or should have known of the alleged infringement since at least 1985, and plaintiffs' delay in filing suit until 1993 was unreasonable and prejudiced defendant. The court further finds that application of laches to bar plaintiffs from recovering damages up to the date of filing in this court is equitable in this case. Because plaintiffs' claim is solely for damages incurred prior to July 1993, plaintiffs' claim will be dismissed in full.[5]

### CONCLUSION

Plaintiffs' motion for recusal is denied. Defendant's motion for summary judgment on the grounds of laches is granted. Plaintiffs' complaint is dismissed.

**IT IS SO ORDERED.**

---

4. Although the court has assumed Raitport is without significant funds, neither party has presented the court with evidence on this issue.

5. The court notes that on November 30, 1994, plaintiffs filed a notice of motion and motion to file supplemental pleadings. Because defen-

dant's have not filed an answer in this action plaintiffs did not require court approval to file a first amended complaint. Plaintiffs have not, however, filed an amended pleading with the court.