**Seymour STEIN, Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

No. CIV. A. 98–11682–WGY.

United States District Court,
D. Massachusetts.

April 6, 2001.

Jerry Cohen, James C. Hamilton, Perkins, Smith & Cohen, Boston, Abraham Ogman, Delray Beach, FL, for Plaintiff.

Cameron Elliot, Department of Justice, Commercial Litigation Branch Civil Div., Washington, DC, Susan M. Poswistillo, United States Attorney's Office, Barbara Healy Smith, U.S. Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

The invention at issue in this case is disclosed in U.S. Patent Application Serial No. 05/301,945 ("the Application") filed on October 30, 1972. Def.'s Opp'n Ex. B. The plaintiff, Seymour Stein ("Stein"), acceded to the rights of the Application by assignment on July 18, 1997. *Id.* Ex. A at 002158–59. The Application describes a basic technique for locating broad classes of radio emitters using receivers located on one or more moving platforms. Although the United States ("the Government") allowed Claims 1–3 and 5–10 of the Application, *id.* Ex. B at D005104, D005138–41, the Government imposed a secrecy order on the Application on April 9, 1973, *id.* Ex. B at D005144, pursuant to 35 U.S.C. § 181, which states in pertinent part that "[w]henever publication or disclosure by the grant of a patent on an invention in which the Government has a property interest might, in the opinion of the head of the interested Government agency, be detrimental to the national security, the Commissioner of Patents upon being so notified shall order that the invention be kept secret and shall withhold the grant of a patent therefor under the conditions set forth hereinafter," 35 U.S.C. § 181. The secrecy order was annually renewed until its rescission on March 22, 2000. Def.'s Opp'n Exs. B, C (rescinding order). The Government has not yet granted a patent.

Stein filed the present action against the Government on August 10, 1998 pursuant to 35 U.S.C. § 183, seeking compensation for the Government's use of the invention while it was under the secrecy order. Both Stein and the Government have filed cross motions for partial summary judgment on the Government's defense of laches.[1] The Court heard these motions on November 8, 2000, and took the issue under advisement. On February 27, 2001, this Court denied both cross motions for partial summary judgment without opinion. However, the Court now alters its initial order. Treating the cross motions as a case stated pursuant to the parties' consent, the Court now concludes that the Government's laches defense is without merit, and thus grants Stein's Motion for Partial Summary Judgment.

## I. FACTUAL BACKGROUND [2]

Stein's complaint seeks compensation for the Government's use of the invention described in the Application. Compl. ¶ 1. Stein, pursuant to section 183, applied for an administrative determination of compensation by sending a demand for compensation to the Department of the Army on November 1, 1997. *Id.* ¶ 8. Because no agreement was reached, Stein seeks compensation in this Court for the Government's alleged use of the invention in gov-

---

1. The Government also moved for partial summary judgment on the ground that the Assignment of Claims Act, 31 U.S.C. § 3727, barred any recovery by Stein for claims accruing prior to July 18, 1997, the date on which he was assigned the Application. The Court, however, denied this motion at the motion hearing. Tr. Mot. Hr'g at 13.

2. All of the cited exhibits were filed under seal, and those cites to the "Protected Annex" are subject to a Protective Order.

ernment projects under the names of CHAALS, SUNDANCE, ELOQUENCE, OLYMPIAD, and DGSS. *Id.* ¶ 5. In its Interrogatories, the Government specified two specific systems that allegedly used the technology disclosed in the Application: (1) the Emitter Location System ("ELS"); and (2) the Coherent Emitter Location Testbed ("CELT"). Def.'s Opp'n Ex. D at 8 (Def.'s Resp. to Pl.'s Interrogs.).

For the purpose of establishing its laches defense, the Government argues that there was a twenty-year delay in filing suit from the time at which Stein and his assignor had actual or constructive knowledge of the Government's use of the invention disclosed in the Application. Adams–Russell Co. owned the Application until 1989. *Id.* Ex. F. In 1969, Stein founded and headed until 1979 Stein Associates, which became a division of Adams–Russell in 1970. *Id.* Ex. E at 599. Thus, To prove that Stein and his assignor, Adams–Russell Co., had constructive knowledge of the Government's use of these two systems, the Government argues that Stein, as head of Stein Associates, and Adams–Russell, as owner of Stein Associates, were on constructive notice of contracts that Stein Associates entered into or competed for that related to the Government's use of the invention between 1970 and 1979. Specifically, the Government argues that Stein and Adams–Russell should have been aware of the Government's use of the invention based on Stein Associates' participation in Contract Number F30602–74–C–0239.

In April 1975, under Contract Number F30602–74–C–0239, GTE Sylvania and Stein Associates designed a system for locating communication emitters based on the differential time of arrival ("DTOA") and differential Doppler ("DD") of the emitted signal received at two or more air-

borne collection sites through the process of "cross-correlating." Protected Annex Ex. 1 at 000900, 000924–25, 000934. The intersection of the DTOA and DD defined the emitter location. *Id.* at 000932. The design contract was based in part on Stein's own research. *Id.* at 001464. IBM, GTE Sylvania, and Stein Associates competed for this design program, and the following production contract was ultimately granted to IBM. *Id.* Ex. 2 at D005825, Ex. 3 at D005502. The purpose of the IBM production contract was to test the feasibility of the design ELS technique. *Id.* The ELS project was completed by February 1978, *id.* Ex. 3 at D005502, and the CELT project, which is a second generation emitter location system derived from ELS, *id.*, was completed by October 1980, *id.* at D005500.

The Government argues that because Stein Associates competed for the production contract, which followed its participation in the design contract, Stein and Adams–Russell should have been aware, at least constructively, of the Government's intent to build the ELS system in the production contract. Stein replies that the most one can infer is that Stein knew of the existence of such programs but not the particular techniques being used in them. Given Stein Associates' participation in the design contract, however, the Court infers that Stein and Adams–Russell were on constructive notice of the Government's use as early as 1978.

The ELS and CELT systems are also relevant to the laches defense because the Government contends that it suffered evidentiary prejudice in the form of lost or destroyed documentation that would establish its defenses to Stein's present suit with respect to these two infringing systems. Def.'s Opp'n at 12. Specifically, the Government raises two defenses to Stein's claims based on these two systems.

The Government first points to a license defense, arguing that Stein Associates reduced to practice at least Claims 1 and 5 of its Application in performance of U.S. Air Force contract F33615–73–C–1147 in 1973. *Id.* at 3. The Government asserts that the contract itself was probably destroyed pursuant to government regulation. *Id.* Exs. J (letter), K (Air Force Manual 37–139) (mandating destruction of general contract records after six years and three months of final payment).[3] Remaining evidence of the contract is twofold: (1) a final report for the contract submitted by Stein Associates, *id.* Ex. H; and (2) a contract close-out sheet, *id.* Ex. I. The parties are in disagreement as to the import of these two documents.

Stein contends that the final report is conclusive evidence of the fact that the contract was not a production contract but rather was merely a design contract meant to demonstrate the use of its proprietary signal processor to confirm assumptions on acceptable receiver characteristics. Pl.'s Reply at 5; *id.* Ex. A at 00249 (quoting final report as indicating that "[t]he primary objective of this program is to provide a realistic demonstration that differential delay and Doppler *measurements* can be made with high enough accuracy to be useful in a communications emitter location system"). Stein also contends that because the contract close-out lacks any

list of inventions reduced to practice under the contract, it "conclusively establishes that there were none." Pl.'s Reply at 5–6.

To the contrary, the Government contends that the final report proves that the contract was a reduction to practice of Claims 1 and 5 of the Application. Def.'s Reply at 8; Def.'s Opp'n at 3 (quoting *id.* Ex. H at 000249 [noting that the contract was "a realistic demonstration that differential delay and Doppler *measurements* can be made with high enough accuracy to be useful in a communications emitter location system"]); Def.'s Reply Ex. P. Moreover, the Government contends that the fact that the close-out sheet references a patents rights clause constitutes circumstantial evidence of the existence of a patents rights clause in the contract. Def.'s Opp'n at 11; *id.* Ex. I.

The second defense that the Government points to is that the disclosure of information used to create the ELS and CELT systems was not from Stein's Application, but rather from independent sources. Under section 183, recovery for use of an invention only stems from damages from the disclosure of the patent application by the Patent Office. 35 U.S.C. §§ 181, 183. The Government maintains that ELS resulted from the work of Dr. John Grindon of the Conductron Corporation and of IBM employees. Def.'s Opp'n at 12; *id.* Ex. L (Interroga-

---

3. In actuality, the contract was not destroyed. On February 16, 2001, the Government filed a second supplement to its cross-motion for summary judgment, informing the Court that the Government was able to locate and produce U.S. Air Force contract F33615–73–C–1147 and its contract file. Although the Court is certainly troubled by this turn of events, the Court nonetheless concludes that it is bound to the record present when the parties consented to treating the cross-motions for summary judgment as a case stated, *infra* at 10.

The Court emphasizes, however, that even taking into account the presence of the contract, the Court's ultimate conclusion that the Government failed to meet its burden of proof as to the unreasonableness of Stein's delay remains unchanged. On the other hand, the Court's findings as to prejudice would, of course, differ. Taking into account the presence of the contract, the Government did not suffer evidentiary prejudice to its license defense. The prejudice to the Government is limited to its inability fully to assert that the Government's use resulted from disclosures from sources other than the patent invention.

tory Resp. No. 6). The Government, however, maintains that the relevant contract, F33615–73–C–1147, and its technical proposal entitled "Time of Arrival (TOA) Location of Nonpulse Emitters," which was prepared for the Rome Air Development Center by Conductron and purportedly could corroborate Dr. Grindon's contribution to the development of ELS and CELT, Def.'s Opp'n at 12, have not been located and have probably both been destroyed over time, *id.* The Government argues that it is prejudiced by the loss of these documents because, at most, it can now only piece together the contents of IBM's and Dr. Grindon's involvement through other evidence.

## II. ANALYSIS

### A. *Procedural Posture*

Although the parties brought cross motions for partial summary judgment, on the suggestion of the Court, the parties agreed to treat the cross motions for summary judgment as a case stated. Tr. Mot. Hr'g at.5; *Cont'l Grain Co. v. P.R. Mar. Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992) [4] (noting that parties may stipulate to treating cross motions for summary judgment as a case stated). Thus, rather than taking all inferences in favor of the non-moving party as it would for motions for summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 [1970] ), the Court draws the necessary inferences from the record as of November 8, 2000, *United Paperworkers Int'l Union Local 14 v. Int'l Paper Co.*, 64 F.3d 28, 31 (1st Cir.1995) (case stated allows district court to engage in fact finding, including the drawing of inferences); *Cont'l Grain Co.*, 972 F.2d at 429 n. 7.[5] On January 23, 2001, the Government filed a supplement to its partial motion for summary judgment, seeking to place additional evidence before the Court. The Court, however, denies this motion as untimely and unduly prejudicial to Stein, who only agreed to treat this as a case stated on the papers on file as of November 8, 2000.

### B. *Laches*

Laches is an equitable doctrine, the application of which is committed to the discretion of judges to allow for its flexible application. To be successful in its laches defense, the Government bears the burden of proving that:

1. [T]he plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and

2. [T]he delay operated to the prejudice or injury of the defendant.

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed.Cir. 1992); *accord Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed.Cir.1998). Ultimately, however, this Court has equitable discretion to determine whether there is a

---

4. As this is a procedural issue unrelated to substantive patent law, First Circuit law is controlling. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed.Cir.1999).

5. Accordingly, by consenting to treat this as a case stated, the Government waived its arguments that Stein's motion for summary judgment on the defense of laches should be dismissed without prejudice to allow the Government more time to collect evidence pursuant to Federal Rule of Civil Procedure 56(f). Similarly, the Government waived its arguments that its laches defense should be reserved for a later time because it cannot be fully and fairly litigated without the use of classified information.

viable defense of laches. *A.C. Aukerman Co.*, 960 F.2d at 1032; *Giese v. Pierce Chem. Co.*, 29 F.Supp.2d 33, 42 (D.Mass. 1998). "[T]he length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability must be weighed to determine whether the patentee dealt unfairly with the alleged infringer by not promptly bringing suit. In sum, a district court must weigh all pertinent facts and equities in making a decision on the laches defense." *A.C. Aukerman Co.*, 960 F.2d at 1034.

█ The parties agree [6] and equity requires that laches be an available defense to an action under section 183. The key question in this case, however, is whether a *presumption* of laches should arise after a certain length of time. The Government would have this Court apply the six-year presumption applicable to a patent infringement action; Stein would, however, have this Court distinguish section 183 suits from typical infringement actions. The Court concludes that Stein is correct that section 183 does not lend itself to a presumption of laches.

1. Presumption of Laches

█ In a suit for patent infringement, a presumption of laches arises if the patentee delays filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity. *Wanlass*, 148 F.3d at 1337; *A.C. Aukerman Co.*, 960 F.2d at 1035–36. The presumption acts as a bursting bubble, shifting the burden of production to the plaintiff, who must then "rais[e] a genuine issue respecting either factual element of a laches defense." *A.C. Aukerman Co.*, 960 F.2d at 1038. Once the presumption is

rebutted in this manner, it is overcome, and the defendant bears the burden of persuasion in establishing both elements of the laches defense. *Id.* at 1038–39.

It is unclear, however, if this presumption should arise for suits brought pursuant to section 183. In *A.C. Aukerman Co.*, the Federal Circuit created the presumption of laches for patent infringement actions by borrowing from section 286, which limits recovery in infringement actions to infringements that occurred within six years of the filing of the complaint, 35 U.S.C. § 286. *A.C. Aukerman Co.*, 960 F.2d at 1034–36.

No limitation on recovery analogous to section 286 is applicable to claims for compensation brought under section 183. Stein, seizing this distinction, argues that because section 183 allows a plaintiff to delay suit until six years after the issuance of the patent, and ultimately the issuance of the patent is delayed until the Government decides to rescind the secrecy order, the delay is the fault of the Government. Pl.'s Reply at 3–4. Accordingly, he argues that he should not be penalized by the presumption of laches for taking a course of action that is explicitly condoned by section 183 itself. In response, the Government argues that the lack of a statute of limitations on the initiation of suit before the issuance of a patent in section 183 does not prevent the application of the six-year presumption of laches because in *A.C. Aukerman Co.* itself, it was clear that the six-year limitation that was borrowed from section 286 was not a statute of limitations at all but merely a limitation on the period of recovery. Def.'s Reply at 3–5.

The Court rejects the Government's argument because regardless of whether

---

**6.** Although the Government interprets Stein as arguing that the defense of laches can never apply to a section 183 claim, the Court reads Stein as making the more limited argument that a presumption should not apply.

section 286 is a statute of limitations, its six-year limitation on recovery defines a limitation period from which a court can borrow to create a presumptive period of delay for infringement actions. No analogous statute exists from which the Court can borrow a time period to establish a presumption for suits under section 183. Moreover, although it is true that the Federal Circuit has applied a six-year presumption of laches in contexts in which there was no statute of limitations, such cases are distinguishable. Specifically, the Government relies on *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157 (Fed.Cir.1993), in which the Federal Circuit affirmed a district court's application of the six-year presumption of laches derived from section 286 to a claim to correct inventorship under 35 U.S.C. § 256, even though it contains no statute of limitation,[7] *id.* at 1163. The Government concludes from *Advanced Cardiovascular* that this Court should similarly borrow the six-year limitation from section 286 to establish a presumption of unreasonable delay for claims under section 183. The Court declines the Government's invitation.

The Court concludes that for suits brought under section 183, no presumption of laches should arise because of the unique design of that section. Section 183 explicitly sets out two routes, one administrative and judicial and one purely judicial, by which an inventor can seek compensation for governmental use of her invention:

■ An applicant, his successors, assigns, or legal representatives, whose patent is withheld [pursuant to a secrecy order], shall have the right, beginning at the date the applicant is notified that, except for such order, his application is otherwise in condition for allowance ... and ending six years after a patent is issued thereon, to apply to the head of any department or agency who caused the order to be issued for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure. The right to compensation for use shall begin on the date of the first use of the invention by the Government.... If full settlement of the claim cannot be effected, the head of the department or agency may award and pay to such applicant, his successors, assigns, or legal representatives, a sum not exceeding 75 per centum of the sum which the head of the department or agency considers just compensation for the damage and/or use. A claimant may bring suit against the United States in the United States Claims Court or in the District Court of the United States for the district in which such claimant is a resident for an amount which when added to the award shall constitute just compensation for the damage and/or use of the invention by the Government. [2] The owner of any patent issued upon an application that was subject to a secrecy order issued pursuant to section 181 of this title, who did not apply for compensation as above provided, shall have the right, after the date of issuance of such patent, to bring suit in the United States Claims Court for just compensation for the damage caused by reason of the order of secrecy and/or use by the Gov-

---

7. Section 256 states in relevant part that "[w]henever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the [Patent Office] may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error." 35 U.S.C. § 256.

ernment of the invention resulting from his disclosure. .

35 U.S.C. § 183. Unlike section 256, construed in *Advanced Cardiovascular*, which is silent as to a statute of limitations and a limitation on damages, section 183 *explicitly* speaks to both. Under both routes, section 183 allows an inventor to bring suit for all of the damages that arose from her application disclosure as late as six years after the issuance of the patent, regardless of when the use by the Government first occurred. Because there is an explicit conflict between the terms of section 286 and section 183, borrowing the six-year period from section 286 to create a presumption of laches under section 183 would be wholly inappropriate.

The fact that section 183 differs from other infringement statutes in that it condones plaintiffs' delay was made clear in *AT & T v. United States*, 231 Ct.Cl. 360, 685 F.2d 1361 (1982). Given the two routes to compensation available under section 183—one administrative and judicial, the other purely judicial—the Court of Claims was asked to decide in *AT & T* whether the statute of limitations should begin running for the purely judicial route at the moment the patent was first allowed, which is the first moment an inventor can sue for compensation under section 183 under the administrative and judicial route. *Id.* at 1366. In the end, the court refused to start the statute of limitations from the date of allowance; rather, it held that the statute of limitations started when the patent first issued, which is the first moment an inventor can sue under the purely judicial route. *Id.* In making this determination, the Court of Claims made explicit that a plaintiff's delay in bringing suit under section 183 is not only authorized by the statute, but also a result of the Government's extension of its secrecy order:

While it may be true that plaintiffs could have brought an action before the issuance of the patent (by choosing the administrative route), it was not plaintiffs' own actions which produced a 22–year delay between the date of the [allowance] and the issuance of the patent. Rather, it was the long period of the pendency of the secrecy order—imposed by the government to further the ends of national security—which resulted in such a long lapse of time. This case, therefore, does not involve a situation where a plaintiff has attempted to bypass the statute of limitations through the manipulation of events of his own choosing. Congress has expressly provided two independent routes to compensation in section 183, and we see no reason why plaintiffs should be penalized for choosing a course of action expressly sanctioned by statute.

*Id.* at 1367. Although Stein opted to take the administrative and judicial route, the reasoning of *AT & T* is equally applicable to this case because under *both* routes, the statute expressly condones bringing suit as late as six years following the issuance of the patent. Moreover, Stein should not be penalized for delay in taking the administrative route when the same delay (if not longer) would be sanctioned had he taken the purely judicial route. Under either route, the statute contemplates delay of suit until after the patent has been issued, a delay that is ultimately caused by the Government's continual renewal of its secrecy order.

A plaintiff's delay in bringing suit under section 183 should not be presumed unreasonable and prejudicial because the Government controls the length of the delay. To this the Government merely replies, "So what?" Tr. Mot. Hr'g at 9. The Court, however, finds this distinction between section 183 actions and typical infringe-

ment actions compelling. To presume the plaintiff responsible for delay under section 183 when the Government controls the delay would itself be inequitable.

The Government's reliance on *Raitport v. United States*, 33 Fed. Cl. 155 (1995), *aff'd*, 74 F.3d 1259 (Fed.Cir.1996) (unpublished table decision), is inapposite. Although in *Raitport* the court applied a six-year presumption of laches to dismiss an infringement action against the Government, the plaintiff was not suing under section 183. The mere fact that *Raitport* involved a suit for infringement damages against the Government does not make it analogous to suits under section 183. It is not the fact that one is suing the Government that makes the six-year presumption inapplicable, but rather the specific design of section 183 that condones delay and makes the delay dependent on the Government that makes the presumption inapplicable. Section 183 sets forth its own statute of limitations as well as its own limitation on damages; thus, borrowing a six-year period for a presumption inappropriate. *Cf. Robinson v. United States*, 236 F.2d 24, 27 (2d Cir.1956) ("Section 183 apparently sets out a comprehensive scheme for providing compensation in all cases where secrecy orders are issued. There is no indication that Congress intended that this scheme should be supplemented by any other statutory provision . . . .").

### 2. Unreasonable and Inexcusable Delay

█ Because no presumption of laches applies, the Government bears the burden of proving that Stein's delay in bringing suit was unreasonable and inexcusable. The period of the delay begins from the moment that the plaintiff knew or reasonably should have known of the infringe-

ment activities of the defendant. *A.C. Aukerman Co.*, 960 F.2d at 1032.

The Government argues that Stein and Adams–Russell had constructive knowledge of the Government's use of the invention as early as 1978, resulting in a twenty-year delay before Stein brought suit in 1998, *see* Def.'s Opp'n at 9. The Court concludes on this record that both Stein and Adams–Russell had constructive knowledge as of 1978 of the Government's use of the invention based on their participation in the design contract and their competition for the subsequent production contract. Constructive knowledge of the infringement is sufficient to begin the laches period. *Wanlass*, 148 F.3d at 1338. Moreover, Stein must take responsibility for the knowledge and delay of his assignors, here Adams–Russell. *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed.Cir.1997), *overruled on other grounds by Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed.Cir. 1998) (en banc); 6 Donald S. Chisum, *Chisum on Patents* § 19.05[2][a][ii], at 572–73 & n. 52 (1978 & Supp.2000).

Stein argues that his delay is excusable because it is sanctioned by section 183 itself; put differently, Stein relies on the fact that under section 183 mere delay in bringing suit is not unreasonable or inexcusable because it is condoned by section 183 and controlled by the Government. The Government offers no refutation to Stein's argument, in essence wholly relying on its (incorrect) belief that a six-year presumption of laches exists under section 183. Indeed, the Government presents no evidence proving that Stein's delay is inexcusable or unreasonable.

The Government's evidence of constructive knowledge alone is insufficient to establish a laches defense. The Government must come forward with evidence that Stein's delay in bringing suit was unrea-

sonable and inexcusable. This the Government has failed to do; instead it merely has pointed to the fact that *Stein* offers no evidence proving that his delay was reasonable or excusable. Def.'s Opp'n at 10 ("Plaintiff offers no evidence explaining his conduct."). Indeed, at the motion hearing, the Government repeated its reliance on Stein's failure to present evidence as establishing the unreasonableness of his delay:

> THE COURT: Assume that there is not a presumption in your favor. Can I conclude even on this undisputed record that his delay was unjustified?

> MR. ELLIOT: Yes, your Honor. Because there is—plaintiff has offered no evidence explaining his delay. There's no affidavit, there's no declaration, there's nothing . . . . Plaintiff has to actually offer evidence.

Tr. Mot. Hr'g at 7. The Government errs, however, in assuming that *Stein* must come forward with evidence establishing that his delay was reasonable. Absent a presumption of laches, it is the *Government's* burden to come forward with evidence of the unreasonableness of Stein's delay. In light of the Government's failure to present evidence that Stein's delay was unreasonable, Stein is under no obligation to present evidence excusing his delay. *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1556 (Fed.Cir.1996).

The Government's failure to present evidence going to the unreasonableness of Stein's delay is fatal to its laches defense. *Id.* (holding that evidence of plaintiff's knowledge of delay and prejudice alone is insufficient evidence that such delay was unreasonable); *GFI, Inc. v. Franklin Corp.*, 88 F.Supp.2d 619, 636 (N.D.Miss. 2000). This Court does not find Stein's delay unreasonable simply because it may have extended for twenty years. Absent a presumption, mere delay cannot be deemed unreasonable without some showing on the part of the defendant. *Meyers v. Asics Corp.*, 974 F.2d 1304, 1307 (Fed. Cir.1992) (noting that in the absence of the presumption, laches usually requires conduct that would affect the balance of equities such as taking as express position and then altering that position or expressly threatening litigation and then delaying bringing suit for several years). Moreover, the mere fact that prejudice may have followed the delay does not make it unreasonable at least with respect to suits under section 183 because the Government controls the delay and the statute condones it. The Government put all its eggs in the presumption basket, then lost its basket. Now the Government simply has no evidence to show that Stein's delay was unreasonable and inexcusable.

### 3. Prejudice

■ Because the Government is unable to prove that Stein's delay was unreasonable, the Court need not consider whether Stein's delay prejudiced the Government. For the purpose of having a complete record, however, the Court nonetheless considers the question and finds that the Government has established prejudice. Prejudice in a laches defense comes in two forms: evidentiary and economic. *A.C. Aukerman Co.*, 960 F.2d at 1033. Here, the Government is claiming that its prejudice is evidentiary. "Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.*

The Government's alleged evidentiary prejudice is twofold: (1) the Government no longer has the contract with Stein Associates that could have established that the

Government had a license to create the ELS system; and (2) the Government no longer has the contract that could have proven that IBM, and not the Application, led to the creation of the ELS and CELT systems. Def.'s Opp'n at 11–12.

First, the Government argues that it acquired a license to the invention when Stein Associates reduced to practice at least Claims 1 and 5 of its patent application in performance of U.S. Air Force contract F33615–73–C–1147 in 1973. "Often in a Government contract, the supplier of services or goods agrees that any inventions conceived of or first actually reduced to practice in the performance of the contract may be used by the Government on a royalty-free, nonexclusive basis." *Technical Dev. Corp. v. United States*, 220 Ct.Cl. 128, 597 F.2d 733, 745 (1979); *see also Farrand Optical Co. v. United States*, 317 F.2d 875, 882 (2d Cir.1962) (license defense applies to suits under section 183), *rev'g* 175 F.Supp. 230 (S.D.N.Y.1959), *aff'd by an equally divided court*, 317 F.2d 875, 883 (2d Cir.1962) (en banc), *modified by* 325 F.2d 328 (2d Cir.1963). Now that the contract has been destroyed, however, the Government cannot substantiate its license theory.

Stein attempts to refute that the Government has been prejudiced by the loss of the Stein Associates contract by arguing that the final report of the contract indicates that it was intended as a design contract, and not a production contract, in which Stein Associates merely "demonstrated the use of its proprietary signal processor ... to confirm its assumptions apropos its findings on acceptable receiver characteristics." Pl.'s Reply at 5 (citing *id.* Ex. A). Moreover, Stein argues that the fact that the contract close-out sheet lacks any indication of inventions reduced to practice is conclusive of the fact that the contract did not include any reduction of its design to practice. Pl.'s Reply at 5–6 (citing *id.* Ex. B). The Government argues in return that the final report of the Stein Associates contract does suggest that the project constituted a reduction to practice of Claims 1 and 5, Def.'s Reply at 8 (citing *id.* Ex. P), and that the close-out sheet indicates that there was in fact a patent rights clause in the contract itself, Def.'s Opp'n at 11 (citing *id.* Ex. I).

Whether the contract did in fact contemplate the reduction of Claims 1 and 5 to practice and whether the Government had a patent rights clause in the contract is unclear on this record, which in itself indicates the evidentiary prejudice caused by Stein's delay in bringing suit. Indeed, Stein's arguments fail conclusively to establish that the contract could not have resulted in a reduction to practice of the design. First, even design contracts can result in the reduction to practice of an invention. *See Hazeltine Corp. v. United States*, 820 F.2d 1190, 1196–98 (Fed.Cir. 1987) (whether research and development contract was a reduction to practice turned on whether it was established that the invention would perform its intended function beyond a probability of failure); *see also Technical Dev. Corp.*, 597 F.2d at 746 ("If the Government and the patentee entered into several continuing research and development contracts and the invention was not separate from or independent of the ongoing program, the Government is entitled to a license."). Second, the failure to list inventions reduced to practice on the contract close-out sheet does not conclusively establish that none existed. *McDonnell Douglas Corp. v. United States*, 229 Ct.Cl. 323, 670 F.2d 156, 160 (1982). Because the first actual reduction to practice of Claims 1 and 5 apparently occurred in performance of this contract, the original contract would suffice to determine whether the Government was licensed. Thus, the Government is preju-

diced by its inability to access the Stein Associates contract, which was destroyed as a result of the passage of time.[8]

Second, access to the IBM contract could also have assisted the Government in its defense. In suits under section 183, the Government is only responsible to the inventor for the damage caused by the order of secrecy that results from the inventor's disclosure to the Government. 35 U.S.C. §§ 181, 183. Hence, the Government argues that it is materially prejudiced by its inability to access its contract with IBM to design and test an ELS and CELT system because that contract would have assisted the Government in showing that the use of the claimed invention did not result from Stein's disclosure but rather from the Government's contract with IBM. Def.'s Opp'n at 12. Stein's reference to the possible fact that the same agency was involved in the secrecy order, the contract with Stein Associates and GTE Sylvania, and the contract with IBM, Pl.'s Reply at 7, is a bare allegation in an attempt to point out the possibility of the Government's reliance on the Application as opposed to IBM's knowledge. Stein offers no evidence, however, to dispute the Government's material prejudice resulting from the destruction of the contract with IBM. The fact that the Court cannot conclusively determine whether the Government's use resulted from Stein's disclosure or from the IBM contract suggests that the Government is materially prejudiced in its defense.

### 4. Equitable Discretion

■ The Court's inquiry does not end here. Rather, the Court must weigh all of the evidence and equities in making a decision on the laches defense. *A.C. Aukerman Co.*, 960 F.2d at 1032. Even though the Government has proven to the Court's satisfaction that it was materially prejudiced in its defense by the passage of twenty years, equity does not require this Court to make Stein bear the burden of this delay. Under the design of section 183, the Government controls the period of delay with every renewal of its secrecy order, here for a total of twenty-seven years. Thus, any prejudice the Government suffered was by its own hand. Absent some evidence that Stein's delay in bringing suit was somehow unreasonable or inexcusable, to hold Stein accountable for the delay would both frustrate the design of section 183 and be inequitable. This Court concludes that the Government has not satisfied its burden of persuasion on its defense of laches, and therefore Stein is not barred by the doctrine of laches from bringing his suit.

### III. CONCLUSION

Treating Stein's Motion for Partial Summary Judgment on the Laches Defense [Docket no. 34] and the Government's Motion for Partial Summary Judgment on the Laches Defense [Docket no. 36] as a case stated, the Court GRANTS Stein's Motion for Partial Summary Judgment on the Laches Defense [Docket no. 34], concluding that the Government's laches defense is without merit.

---

8. As discussed before, *supra* note 3, the contract in fact was *not* destroyed, so this finding is only true for the record presented to the Court on November 8, 2000.